1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  REINA MARGARITA SAZO,              Case No. EDCV 15-01078 SS

12                 Plaintiff,

13       v.                           **MEMORANDUM DECISION AND ORDER**

14  CAROLYN W. COLVIN,
    Acting Commissioner of Social
15  Security

16                 Defendant.

17

18

19

20                              **I.**

21                          **INTRODUCTION**

22

23      Plaintiff Reina Margarita Sazo ("Plaintiff") brings this

24  action seeking to reverse the final decision of the Commissioner

25  of the Social Security Administration denying her application for

26  Disability Insurance Benefits and Supplemental Security Income.

27  The parties consented, pursuant to 28 U.S.C. § 636(c), to the

28  jurisdiction of the undersigned United States Magistrate Judge.

1   For the reasons stated below, the decision of the Commissioner is
2   REVERSED and the action is REMANDED for further administrative
3   proceedings consistent with this decision.

4

5                               **II.**
6                     **PROCEDURAL HISTORY**

7

8      Plaintiff applied for Disability Insurance Benefits ("DIB")
9   on December 13, 2011 and for Supplemental Security Income ("SSI")
10  on December 16, 2011.   (Administrative Record ("AR") 168-82).
11  Plaintiff alleged disability beginning on December 1, 2009 due to
12  difficulties sitting for extended periods of time, numbness in
13  her hands, and vision problems related to her diabetes,
14  hypertension, and hyperthyroidism.   (AR 38-39, 53, 56-57).
15  Plaintiff's application was initially denied on May 22, 2012, and
16  on reconsideration on November 21, 2012.   (AR 67-112).   Plaintiff
17  requested a hearing on January 19, 2013.   (AR 130-31).   A hearing
18  was held on November 7, 2013 before Administrative Law Judge
19  ("ALJ") Joseph P. Lisiecki III.   (AR 50).   Plaintiff testified
20  with the aid of an interpreter.   (AR 50-51).   Vocational expert
21  ("VE") Kristan Cicero also testified.   (AR 61-65). The ALJ issued
22  an unfavorable decision dated November 21, 2013.   (AR 36-44).   On
23  April 7, 2015, the Appeals Council denied Plaintiff's requested
24  review.   (AR 1-9).   Plaintiff timely filed this action on June 1,
25  2015.
26  \\
27  \\
28  \\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920. The steps are:

> (1) Is the claimant presently engaged in substantial gainful activity?[1]  If so, the claimant is found not disabled.  If not, proceed to step two.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

1          (2) Is the claimant's impairment severe?  If not, the
2              claimant is found not disabled.  If so, proceed
3              to step three.
4          (3) Does the claimant's impairment meet or equal one
5              on the list of specific impairments described in
6              20 C.F.R. Part 404, Subpart P, Appendix 1?  If
7              so, the claimant is found disabled.  If not,
8              proceed to step four.
9          (4) Is the claimant capable of performing his past
10             work?  If so, the claimant is found not disabled.
11             If not, proceed to step five.
12         (5) Is the claimant able to do any other work?  If
13             not, the claimant is found disabled.  If so, the
14             claimant is found not disabled.
15
16  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
17  262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R.
18  §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).
19
20       The claimant has the burden of proof at steps one through
21  four and the Commissioner has the burden of proof at step five.
22  Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an
23  affirmative duty to assist the claimant in developing the record
24  at every step of the inquiry.  Id. at 954.  If, at step four, the
25  claimant meets his burden of establishing an inability to perform
26  past work, the Commissioner must show that the claimant can
27  perform some other work that exists in "significant numbers" in
28  the national economy, taking into account the claimant's residual

4

functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE").  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).


# IV.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F. 3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).


"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson

5

v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

Plaintiff contends that the ALJ erred by rejecting the presence of a significant impairment, i.e., her visual impairment. Specifically, Plaintiff contends that the ALJ failed to incorporate Plaintiff's documented visual impairments in the residual functional capacity assessment and hypotheticals presented to the VE. According to Plaintiff, this error caused the ALJ's determination at step four that Plaintiff can perform past relevant work as a lens inspector to be invalid.

\\

\\

\\

6

**A.   <u>Medical Background of Plaintiff's Visual Impairments</u>**

On August 4, 2012, Plaintiff saw Dr. Vinh Dang for a comprehensive eye examination. (AR 333). Dr. Dang found that Plaintiff's best corrected visual acuity was 20/40 in both eyes and her pupils were sluggish and slow to react to light. (AR 333-37). Dr. Dang further found that Plaintiff had a reduced visual field and exudates present in the superior arcade of the left eye. (AR 41, 333-37). A dilated eye examination revealed scattered dot/blot hemorrhages and cotton wool spots in both eyes. (AR 333-37). Dr. Dang diagnosed Plaintiff with moderate diabetic retinopathy in both eyes. (AR 333).

On October 31, 2012, board-certified ophthalmologist Dr. Calvin Eng examined Plaintiff. (AR 341). Dr. Eng marked the box labeled "good" in response to the question "Is alleged visual acuity consistent with degree of pathology?" (AR 342). Dr. Eng marked the box "fair" in response to the question "Is alleged visual field consistent with degree of pathology?" (AR 342). Dr. Eng's report also notes a reduced visual field. (AR 344-45).

An April 6, 2012 report by consultative examiner Dr. Azizollah Karamlou also notes Plaintiff's 20/40 visual acuity, but ultimately finds "no restrictions for hearing and seeing." (AR 318, 321).

\\

\\

\\

1   **B.   <u>Plaintiff's Testimony About Her Past Relevant Work</u>**

2

3       At the administrative hearing, Plaintiff testified about the

4   demands of her past work as a lens inspector and how her visual

5   impairments, in particular her difficulty with near acuity,

6   impacted her ability to perform her past work:

7

8       A Final inspector is when the lens is ready and I check

9       everything, you know, the power, the diameter,

10      everything and I do the edges if something is wrong,

11      and I change the power if so need like 25. I used to

12      change it and everything and check. Now my vision is

13      not good because sometimes I can see far and sometimes

14      I can see close, you know, it changes every time, and

15      it's really difficult to check in the scope, you know,

16      exactly the powers exactly, especially in the edges.

17      If I do the edges I try with my hands, and I'll do the

18      edges because it's a little thing and my hands get, how

19      do you say, numb? Yeah, and my fingers, and the lens

20      throw out, and I cannot find it, you know, or break

21      anything. That's why I can't do anything right now.

22

23  (AR  57).   Although  Plaintiff's  counsel  twice  attributed

24  Plaintiff's  visual  impairments  to  her  diagnosed  diabetic

25  retinopathy, the ALJ did not ask Plaintiff about her retinopathy

26  and  did  not  include  any  visual  limitations  in  the  seven

27  hypotheticals presented to the VE.  (AR 60, 65, 61-64).

28  \\

1  **C.   Based Upon The Medical Evidence And Plaintiff's Testimony,**

2  **It Was Error To Conclude That Plaintiff Could Perform Her**

3  **Past Relevant Work**

4

5      Plaintiff argues that the ALJ's step four determination that

6  she can perform her past work as a lens inspector is not

7  supported by substantial evidence.   Specifically, Plaintiff

8  argues that the ALJ's step four determination is based on an

9  incomplete RFC assessment that fails to include Plaintiff's

10 visual impairments documented by Dr. Dang and Dr. Eng.

11 (Memorandum in Support of Plaintiff's Complaint ("MSPC") at 5-8).

12 The Commissioner responds that Dr. Dang and Dr. Eng did not opine

13 as to specific functional limitations resulting from Plaintiff's

14 visual impairments, and another (non-ophthalmologist)

15 consultative examiner found no restrictions in "seeing."

16 (Memorandum in Support of Defendant's Answer ("MSDA") at 3-5).

17 The Court agrees that the ALJ erred by failing to include

18 Plaintiff's documented visual impairments in the RFC assessment,

19 causing error at step four.

20

21     At step four of the sequential process, the ALJ must make a

22 threshold determination as to the claimant's residual functional

23 capacity ("RFC").   Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th

24 Cir. 1995) (as amended).   This determination is not a medical

25 opinion but instead an administrative finding reached after

26 consideration of all the relevant evidence, including the

27 diagnoses, treatment, observations, medical records, and the

28 claimant's own subjective symptoms.   See Social Security Ruling

1   96-5p; 20 C.F.R. § 404.1527 (e)(2) (stating that a residual
2   functional capacity finding is not a medical opinion but an
3   administrative finding that is reserved to the Commissioner).
4   The RFC is what a claimant can still do despite existing
5   exertional and nonexertional limitations.   See 20 C.F.R.
6   § 404.1545(a)(1); Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d
7   685, 689 (9th Cir. 2009).   In assessing RFC, the ALJ must
8   consider all of the limitations imposed by the claimant's
9   impairments that are supported by medical evidence.   Carmickle v.
10  Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008);
11  Social Security Ruling 96-8p (1996).   Although the claimant has
12  the burden of proof at step four, the ALJ must still make "the
13  requisite factual findings" to support his conclusions.   Pinto v.
14  Massanari, 249 F.3d 840, 844 (9th Cir. 2001).   The ALJ must make
15  findings of fact regarding the claimant's RFC, the physical and
16  mental demands of claimant's past work, and whether the claimant
17  can return to her past relevant work "either as actually
18  performed or as generally performed in the national economy."
19  Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002); Pinto,
20  249 F.3d at 844-45; 20 C.F.R. §§ 404.1520, 416.920.   Once the ALJ
21  determines the claimant's RFC, he then compares these limitations
22  with the job duties of the claimant's previous work.
23  \\
24  \\
25  \\
26  \\
27  \\
28  \\

**1. The ALJ's RFC Assessment Is Incomplete Because It Fails To Include Plaintiff's Documented Visual Impairments**

Here, the ALJ found that Plaintiff had the following RFC:

[T]o perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations: occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; stand and walk with normal breaks for a total of six in an eight-hour day; sit with normal breaks for a total of six in an eight hour day; postural limitations are frequent; no climbing ladder/rope/scaffolds or heights.

(AR 40). However, this assessment is incomplete because the ALJ failed to include limitations related to Plaintiff's documented visual impairments.[2] See Carmickle, 533 F.3d at 1164.

In arriving at the RFC determination, the ALJ gave "moderate weight" to the findings of examining physician Dr. Dang, who noted Plaintiff's 20/40 visual acuity, sluggish pupils, and reduced visual field and diagnosed Plaintiff with moderate diabetic retinopathy. (AR 41, 333). However, the ALJ declined to incorporate Dr. Dang's findings into Plaintiff's RFC because

[2] Although not raised by Plaintiff, the Court finds that the ALJ erred by not concluding that Plaintiff's eye impairment was severe. See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (step two is a "de minimis" threshold determination); Smolen, 80 F.3d at 1290.

11

1  Plaintiff "is able to drive and there is no indication that her

2  visual impairments limit her." (AR 41).  While Plaintiff may be

3  able to drive, the later part of the ALJ's findings - "there is

4  no indication that her visual impairments limit her" - is

5  contradicted by two ophthalmologists' reports and by the

6  Plaintiff's own testimony.  The ALJ fails to explain why he was

7  rejecting the limitations identified by the doctors and by

8  Plaintiff.

9

10     As with a treating physician, the ALJ must present "clear

11 and convincing" reasons for rejecting the uncontroverted opinion

12 of an examining physician and may reject the controverted opinion

13 of an examining physician only for "specific and legitimate

14 reasons supported by substantial evidence." Carmickle, 533 F.3d

15 at 1164.  Here, the stated reasons are not legitimate nor are

16 they supported by substantial evidence.  The ALJ fails to

17 identify any medical opinions contradicting Dr. Dang or Dr. Eng's

18 findings as to Plaintiff's visual impairments.  (AR 41-43).

19 Although the Commissioner suggests that consultative examiner Dr.

20 Karamlou's opinion that Plaintiff has "no restrictions" in

21 "seeing" supports the ALJ's decision, the ALJ fails to identify

22 Dr. Karamlou's opinion as a ground to reject Dr. Dang or Dr.

23 Eng's findings.  (MSDA at 4).  Even if the ALJ had, the Court

24 would note that Drs. Dang and Eng are ophthalmologists and

25 clearly more qualified than Dr. Karamlou to diagnose Plaintiff's

26 visual impairment.

27 \\

28 \\

1    This Court may not affirm the ALJ's decision based on

2  reasons not articulated by the ALJ. See Molina v. Astrue, 674

3  F.3d 1104, 1121 (9th Cir. 2012) (citing Securities and Exchange

4  Commission v. Chenery Corp., 332 U.S. 194, 196 (1947)) ("[courts]

5  may not uphold an [ALJ's] decision on a ground not actually

6  relied on by the agency"). Moreover, Plaintiff's ability to

7  drive is not a legitimate reason to reject the specific opinion

8  of an examining physician regarding diagnosed visual limitations

9  that pertain to the detailed visual requirements of Plaintiff's

10  past relevant work.[3] See Lester, 81 F.3d at 830-311; Orn, 495

11  F.3d at 639. Finally, the ALJ did not discuss Dr. Eng's report

12  at all, which, as a medical examination consistent with Dr.

13  Dang's report, should have been addressed if it was rejected.

14  See Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n. 10 (9th Cir.

15  2007) (error to fail to discuss opinions of treating and

16  examining physicians). Accordingly, the RFC determination, on

17  remand, must include consideration of Plaintiff's visual

18  impairment or the ALJ must provide specific and legitimate

19  reasons for rejecting Drs. Dang and Eng's opinions regarding

20  Plaintiff's visual impairment.

21  \\

22  \\

23  \\

24  \\

25  \\

26  
_____

27  [3] In any event, Plaintiff's limited ability to drive short
distances to familiar places does not contradict her testimony
that she is unable to perform the visually precise work of lens

28  inspector. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

13

1      **2. The ALJ's Determination At Step Four That Plaintiff Can**
2         **Perform Past Relevant Work As A Lens Inspector Is Not**
3         **Supported By Substantial Evidence Because It Is Based On**
4         **An Incomplete RFC**

5

6         Once the ALJ determines the claimant's RFC, he then compares
7    these limitations with the job duties of the claimant's previous
8    work.  At step four, the claimant carries the burden of proving
9    not just that he cannot return to his own particular job, as he
10   performed it.   Rather, the question is whether the claimant can
11   return to his "former type of work," as that work is generally
12   performed.  <u>Pinto</u>, 249 F.3d at 845 (quoting <u>Villa v. Heckler</u>, 797
13   F.2d 794, 798 (9th Cir. 1986)); <u>Lewis</u>, 281 F.3d at 1083 (a
14   claimant must be able to perform her past relevant work either as
15   actually performed or as generally performed in the national
16   economy).   When classifying a claimant's past relevant job as
17   "actually" performed, ALJs consider "a properly completed
18   vocational report" as well as the claimant's testimony.  <u>Pinto</u>,
19   249 F.3d at 845 (citing Social Security Ruling 82-41, Social
20   Security Ruling 82-61); <u>see also</u> Social Security Ruling 82-62,
21   1982 WL 31386, at *1, *3 ("The claimant is the primary source for
22   vocational documentation, and statements by the claimant
23   regarding past work are generally sufficient for determining the
24   skill level[,] exertional demands and nonexertional demands of
25   such work.").   The best source for information regarding how an
26   occupation is "generally performed" is usually the Dictionary of
27   Occupational Titles ("DOT").   <u>Pinto</u>, 249 F.3d at 845-46
28   (citations omitted); <u>see also</u> 20 C.F.R. §§ 404.1566(d)(1),

416.966(d)(1).  An ALJ may also obtain testimony from a VE "where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed."  Social Security Ruling 82-61 at *2.  Here, the ALJ found that "claimant is able to perform [past relevant work as a lens inspector] as actually and generally performed."  (AR 43).

At the administrative hearing, Plaintiff testified that she cannot perform her past work as a lens inspector because of her visual impairments.  (AR 57).  Specifically, Plaintiff testified that "[n]ow my vision is not good because sometimes I can see far and sometimes I can see close, you know, if changes every time, and it's really difficult to check in the scope, you know, exactly the powers exactly, especially the edges."  (AR 57).  This is evidence that Plaintiff cannot perform her past work as actually performed.  Pinto, 249 F.3d at 845.  However, the ALJ failed to discuss this specific testimony or offer specific, clear and convincing reasons for its rejection.  See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  This was error.

The ALJ also erred by concluding that Plaintiff can perform the work of a lens inspector as generally performed.  The DOT states that the job of lens inspector requires use of precision measuring instruments, a high degree of spatial aptitude ability, a high degree of form perception ability, a medium degree of color discrimination ability, constant accommodation, and constant near acuity.  See DOT 716.381-010, 1991 WL 679442.  "Accommodation" means "[a]djustment of lens of eye to bring an

15

object into sharp focus[; t]his factor is required when doing near point work at varying distances from the eye." See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCODICOT"), Appendix C (U.S. Dept. of Labor 1993). "Near acuity" means "[c]larity of vision at 20 inches or less." See id. These requirements are in apparent conflict with Plaintiff's visual impairments documented by Dr. Deng and Dr. Eng, which, as discussed above, should have been included in Plaintiff's RFC. However, none of the seven hypotheticals presented to the VE included any functional limitations related to Plaintiff's visual impairments. (AR 61-65).

Because the RFC was flawed by omitting limitations based on Plaintiff's visual impairments, the ALJ's step four determination was flawed. See Burger v. Astrue, 536 F. Supp. 2d 1182, 1190 (C.D. Cal. 2008) (vocational expert's testimony based on incomplete RFC "has no evidentiary value," rendering ALJ's step four determination unsupported by substantial evidence) (quoting Lewis, 236 F.3d at 517). The ALJ's step four determination that Plaintiff can perform her past relevant work is based on an incomplete RFC that failed to consider Plaintiff's visual impairments and therefore is unsupported by substantial evidence.

\\
\\
\\
\\
\\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.

## CONCLUSION

Consistent with the foregoing, it is ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further administrative proceedings. Upon remand, the ALJ must include the limitations imposed upon Plaintiff by her diabetic retinopathy and give weight to Plaintiff's description of her past relevant work as she performed it. The ALJ must revise the RFC to recognize the visual limitations from the medical evidence and re-do the sequential evaluation with a corrected RFC. The Clerk of the Court shall serve copies of this order and the Judgment on counsel for both parties.

DATED: February 4, 2016

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE**